IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA : | |
| : | CRIMINAL CASE NUMBER: |
| v.   : | 1:14-CR-287-SCJ-JSA |
| : | |
| YANCEY JACK GARRINGER : | |

**ORDER AND REPORT AND RECOMMENDATION**

The Defendant is charged in a one-count Indictment [9] with escaping from federal prison on June 27, 2014. The Defendant, who is proceeding *pro se*, having expressly waived his right to the assistance of counsel [6][7], has filed two motions to compel discovery currently before the Court [13] [24]. For the reasons stated below, those motions are now hereby **DENIED**. To the extent that these motions, although styled as motions to compel discovery, also could be construed as requesting dismissal of the Indictment, the Court **RECOMMENDS** that they be denied by the District Court.

    A.    *August 6, 2014 Motion to Compel [13]*

Defendant's August 6, 2014 Motion to Compel [13] ("First Motion") states, among other allegations, that:

    3.    Your Affiant is being held in the DCU pre trial unit at USP [i.e., United States Penitentiary] Atlanta under the care of the US Marshals.

    4.    Your Affiant is being denied access to legal materials and means

>   to prepare for his defense in case 1:14-MJ-655-RGV [i.e., the docket number of the criminal complaint in this case] . . . .
>
> 7. That the DCU pre trial unit is a 23/1 lock down unit where Affiant gets one hour (1) out each day to make a call, take a shower (Mon, Wed and Fri) and send an email competing with another 75 to 100 other inmates looking to do the same on 6 phones, 20 showers and 6 computers.
>
> 8. That on 7-24-14 your Affiant requested access by cop-out to Officer Davis and in person to the day watch Officer;
>
> 9. That on 7-25-14 your Affiant requested access in person to the day watch and afternoon watch Officers, both denied.
>
> 10. That on the night of 7-25-14 your Affiant has been given only 45 to 60 min each night in the 'law library.' There is no means to prepare any motions for Court, no working typewriters, no Blacks law dictionary, no dictionary, no law books or reference materials, but only two (2) computers to share with 15+ other pre trial detainees;

[13] at 2-4. The First Motion includes several other allegations of the same general nature. Defendant requests "a working typewriter, a Blacks law dictionary, a F.R.Cr.P. manual and all the necessary time to prepare a defense without prejudice." *Id.* at 6.

At the pretrial conference on September 11, 2014 [19], Defendant orally supplemented his First Motion by further alleging that he had not been able to access and review the discovery provided to him by the prosecution, some of which was in the form of audio-recorded telephone calls on compact disc. Defendant alleged that had been given inadequate access to computers at the

detention center by virtue of his segregation status.

Defendant's request for the Court to provide legal materials and/or order further access to the "law library" of the detention center is meritless. Under the Sixth Amendment, as interpreted in *Faretta v. California*, 422 U.S. 806, 835 (1975), criminal defendants have the right to waive assistance of counsel and represent themselves when they voluntarily elect to do so with knowledge of the disadvantages of self-representation. However, the Eleventh Circuit has held that a *pro se* criminal defendant has no constitutional right of access to a law library or legal materials where he has been voluntarily and knowingly declined the offer of appointed counsel.[1] *See Edwards v. United States*, 795 F.2d 958, 961 nn. 1 & 3 (11th Cir. 1986); *United States v. Denton*, 535 Fed.Appx. 832, 835 (11th Cir. 2013); *United States v. Smith*, 907 F.2d 42, 45 (C.A.6 1990) ("[B]y knowingly and intelligently waiving his right to counsel, the appellant also relinquished his access to a law library"); *see generally Faretta*, 422 U.S. at 835 ("When an accused manages his own defense, he relinquishes, as a purely factual matter, many of the

---

[1] The undersigned conducted a lengthy *Faretta* hearing with Defendant on July 25, 2014, offered the availability of applying for appointed counsel, and repeatedly advised the Defendant of the repercussions of waiving counsel. The Court found that Defendant willfully, knowingly and voluntarily waived these rights. [6][7].

traditional benefits associated with the right to counsel.”).[2]

To the extent Defendant’s reduced access to the detention center’s legal materials or computers results from him being in “lock-down,” “23/1 ” segregation, or other secured status, the Court notes that Defendant is being held on charges of *escape from federal prison*. The propriety of these conditions of confinement, which must first be challenged through proper administrative grievance procedures within the appropriate Executive Branch agency, is not directly before the Court. But it is obvious that an alleged escapee may be detained more restrictively, including as to common areas such as a law library.

Nevertheless, the Court convened a series of status conferences in this case to ensure that Defendant could fully access the computer evidence provided to him in discovery. At the conclusion of the September 11 pretrial conference, the Court continued the case to a status conference on October 2, 2014 [19][22], so that the

---

[2] Moreover, Defendant in this case has made no showing of any specific need for the legal materials he requests. The Defendant’s demonstrated ability to legibly write clearly-understandable motions and other documents shows that a typewriter is not a necessity. The Court cannot conceive, and Defendant does not explain, how Black’s Law Dictionary would assist him in this case.

In addition, Defendant has not been denied all access to computers or other material. The gist of his demands made both in writing and in Court have been that he has inadequate time with the computers at the jail, not that he lacks access altogether. Also, the Court *sua sponte* appointed standby counsel for Defendant, and the Court has encouraged Defendant to consult with standby counsel who may be able to provide copies of basic legal materials or otherwise help answer Defendant’s questions.

Court could hear an update on whether Defendant was provided access to a computer for purposes of reviewing the discovery provided to him. In the meantime, the Court's deputy clerk called the Defendant's counselor at the detention center to inform him of the hearing and its purpose. On October 2, 2014, the Defendant informed the Court that he had been provided several hours worth of access and had been able to review much, but not all, of the provided discovery [22]. The Court then continued the case yet again until October 24, 2014 [25]. On that date, the Defendant confirmed that he had been furnished sufficient computer access to finish reviewing the discovery [25]. Defendant, however, continued to argue that his conditions of lock-down hamper his access to legal materials more generally.[3]

The Court on this record finds that the Defendant has been furnished with more than legally-sufficient accomodations to ensure his access to the discovery materials provided and that he is not entitled to the other relief he requests. The Court therefore **DENIES** the First Motion to Compel [13].[4]

---

[3] To the extent it is not otherwise clear on the docket, the Court clarifies that the continuances from September 11, 2014 through October 24, 2014 were made for the purposes of ensuring the Defendant's access to his discovery materials, and because the ends of justice in granting a continuance on these grounds outweighed the Defendant's and the public's right to a speedy trial pursuant to Title 18, U.S.C. § 3161(h)(7)(A).

[4] To the extent Defendant seeks more time to prepare specifically for trial, that request is premature because the case has not yet been declared ready for trial.

B.   *October 24, 2014 Motion to Compel [24]*

During the October 24, 2014 hearing, Defendant submitted another handwritten Motion to Compel (the "Second Motion"), along with supporting documentation, which the Court accepted and filed on the docket [24]. This document begins by stating:

> In the nature of Amicus Curiae your Affiant, Yancey-Jack: Garringer, the secured party creditor, in propria persona enters this proffered petition, bar CORUM JUDICIA. Affiant, the injured 3rd party intervenor and real party in interest, who is neutral in the public, is making a special visitation by absolute ministerial right to this District Court, "restricted appearance" under Rule E(8) of F.R.Supp.P. asking the Court to compel the plaintiff to produce the contract, compact or instrument that created this liability and to make a determination of who has a superior perfected interest?
>
> Whereas, there appearing no bond, contract or title of record entered by Claimant to initiate the matter alleged by the Attorney for the plaintiff to give it standing as a 'proper party' with a legally perfected interest in the collateral, both real and personal property of the defendant, ex rel. [Yancey Jack Garringer (YJG)]. What standing does the plaintiff have under Constitution Art. III § 2?
>
> For there to be a case or controversy, it is not enough that the plaintiff invoking the power of the Court have keen interest in the issue. That party, must also have 'standing' which requires, among other things, that it have suffered a concrete and particularized injury.

*Id.* at 1-3. The Second Motion continues for several pages in much the same vein, and culminates in the demand that the Court "compel the plaintiff to produce the

---

Now that the case is ready for trial, Defendant should direct all requests to continue the trial date to the District Judge (with a copy to Government counsel), who is responsible for scheduling and presiding over the trial.

documents that give it standing and that the Court make a determination of who has the superior protected interest in the collateral, Ex Rel [YJG]." The Second Motion then argues that if such documents cannot be produced, the Court should "squash this matter for lack of standing and release your Affiant from being held any longer as the surety of this case or case 3:10-CR-89 as it has been discharged." Second Motion [24] at 10.

Former Chief Judge (now Circuit Judge) Carnes recently discussed the patently-frivolous "sovereign citizen" defense, of which Defendant's arguments are a variant:

> In the Northern District of Georgia and elsewhere, a new litigation strategy has become popular with some criminal defendants housed in detention centers awaiting trial. This strategy, based on the defendant's claim to be a "sovereign citizen," serves to delay the proceedings, create unnecessary work for the Court and counsel, and distract the Court from adjudication of the case on its merits. At bottom, a defendant pursuing a sovereign-citizen strategy claims that a federal court has no jurisdiction to try him for the federal crimes with which he is charged. The defendant purports to rely heavily on the Uniform Commercial Code ("UCC"), admiralty laws, and other commercial statutes to argue that, because he has made no contract with the Court or the prosecutor, neither entity can foist any agreement upon him. The criminal code is apparently not one of the groups of statutes whose validity the defendant will acknowledge. Accordingly, the defendant contends that he cannot be found guilty of any violation of federal criminal laws.

*United States v. Perkins*, 2013 WL 3820716, *1 (N.D.Ga. July 23, 2013).[5]

---

[5] As Judge Carnes further offered:

For a discussion of the origins of this "defense," see James Erickson

The merits of Defendant's Second Motion do not require any further discussion as he is plainly not entitled to documents proving the United States's "superior protected interest" in the "collateral" (i.e., himself).

Thus, Defendant's Motion to Compel must be denied.

## CONCLUSION

For the reasons stated above, Defendant's motions to compel [13][24] are hereby **DENIED**, to the extent they seek discovery relief.  To the extent that these motions, although styled as motions to compel discovery, also seek to "squash" the Indictment, *see* [24] at 10, the undersigned **RECOMMENDS** that they be denied by the District Court.

---

Evans, The "Flesh and Blood" Defense, 53 William & Mary L.Rev. 1361 (Mar.2012). As far as this Court is aware, the defense has never succeeded in any court. *See id.* at 1363 (the defense "is legally frivolous ... [and] it is as if the proponent had advanced no argument at all.", and at 1364 (the defense "has no average success rate ... [because it] fails every time.")) *See also United States v. Benabe*, 654 F.3d 753, 767 (7th Cir.2011) (sovereign-immunity defenses are not raised in good faith and the court has "repeatedly rejected ... theories of individual sovereignty, immunity from prosecution, and their ilk.") and cases collected therein.

*Perkins*, 2013 WL 3820716, *1 n. 4.

**IT IS SO ORDERED AND RECOMMENDED** this 5th day of November, 2014

_____
JUSTIN S. ANAND
UNITED STATES MAGISTRATE JUDGE